IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO.   15- |
| v. | : | DATE FILED:   March 3, 2015 |
| DAVID NEALE CARACAPPA | : | VIOLATIONS: |
| | : | 18 U.S.C. § 1349 (conspiracy to commit wire fraud – 1 count) |
| | | 18 U.S.C. § 1956(h) (conspiracy to commit money laundering – 1 count) |
| | | Notices of Forfeiture |

## INFORMATION

## COUNT ONE

THE UNITED STATES ATTORNEY CHARGES THAT:

Beginning on or about September 1, 2008, and continuing until on or about June 28, 2013, in the Eastern District of Pennsylvania, and elsewhere, defendant

**DAVID NEALE CARACAPPA**

conspired and agreed, with Alexander Burke, charged elsewhere, to execute a scheme and artifice to defraud and to obtain money by false and fraudulent pretenses, and in the course of the execution of this scheme caused the transmission of wire communications in interstate and foreign commerce for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

## MANNER AND MEANS

It was part of the conspiracy that:

1. In or about September of 2008, Alexander Burke, an in-house patent attorney for Company A, agreed with Defendant DAVID NEALE CARACAPPA, that Alexander

1

Burke, charged separately in case No. CR 14-565, would send patent work on behalf of Company A to CARACAPPA, CARACAPPA would do no work on the projects, and CARACAPPA would bill Company A the standard fees for the project assigned. Burke and CARACAPPA further agreed that Burke would approve the payment of the bill and when Company A paid CARACAPPA for the bill submitted, CARACAPPA would send most of the funds to Burke for his personal use.

2. Beginning in or about September of 2008, Alexander Burke, on behalf of Company A, engaged the services of defendant DAVID NEALE CARACAPPA as outside counsel to do work related to patent applications for Company A. Burke sent the projects to CARACAPPA, and CARACAPPA returned the work to Burke without having done any substantive work on the projects. Burke himself ensured that the projects were completed.

3. Defendant DAVID NEALE CARACAPPA then submitted a bill to Company A for the standard fee for the work submitted to him, and Alexander Burke reviewed the bill and approved payment of the bill by Company A, even though Burke knew that CARACAPPA did no substantive work on the project for which CARACAPPA billed Company A  Burke's approval caused another employee of Company A to send an electronic message approving the bill to the entity which processed the approved bills for payment. The entities which processed these approved bills were outside the state of Pennsylvania, and the electronic communications from Burke's office to them were interstate wire communications.

4. Company A, relying on Alexander Burke's approval of the bills submitted by defendant DAVID NEALE CARACAPPA, paid CARACAPPA the amount agreed upon as the appropriate billing for the work supposedly (but not) done, and transmitted the funds electronically

from Company A's bank account to CARACAPPA'S bank account at the Bank of the James, account number ***8753, located in Virginia.

5. When defendant DAVID NEALE CARACAPPA electronically received payments from Company A, he then paid most of these funds back to Alexander Burke, while keeping a portion of the funds for himself. CARACAPPA made these payments by causing his bank to make a transfer of funds to Burke's account at the NJM Bank in New Jersey, account number ****2524, which Burke maintained in the name of a separate corporation.

6. Beginning in approximately January of 2013, with the agreement of defendant DAVID NEALE CARACAPPA, Alexander Burke obtained access to the CARACAPPA's billing system and from that point forward generated the bills to Company A in the name of CARACAPPA. Burke thereafter paid CARACAPPA $5,000 per month for his part in the scheme.

7. Between approximately September 1, 2008 and May 12, 2013, Alexander Burke approved billings for work claimed to have been done by defendant DAVID NEALE CARACAPPA, but for which no work was done, in the amount of approximately $2,481,020. Company A paid these billings until it discovered this scheme, and thus paid a total of approximately $2,417,665 to CARACAPPA's bank account at Bank of the James. These payments resulted from approximately 588 fraudulent billings by Burke and CARACAPPA. These funds paid, approximately $2,417,665, were proceeds of the fraud scheme.

8. Between approximately October 6, 2008 and June 28, 2013, defendant DAVID NEALE CARACAPPA and Alexander Burke caused approximately $2,098,977.00 to be transferred from CARACAPPA's Bank of the James account to Burke's NJM Bank account.

These funds were proceeds of the fraud scheme.

## OVERT ACTS

In furtherance of the conspiracy, the defendant and others known and unknown to the grand jury committed the following overt acts in the Eastern District of Pennsylvania and elsewhere:

1. On or about September 1, 2008, defendant DAVID NEALE CARACAPPA submitted a bill to Company A in the amount of $8,000 for the preparation of a patent, after having been engaged to prepare the patent application by Alexander Burke, and for which CARACAPPA had done no substantive work, and Company A assigned this bill invoice number 1751.

2. On or about September 1, 2008, Alexander Burke approved for payment a billing invoice submitted by defendant DAVID NEALE CARACAPPA to Company A in the amount of $8,000 for the preparation of a patent, for which CARACAPPA had done no work, and Company A assigned this bill invoice number 1751.

3. On or about October 6, 2008, defendant DAVID NEALE CARACAPPA caused $7,000 to be transferred from his account at Bank of the James to an account controlled by Alexander Burke at NJM Bank.

4. On or about July 27, 2012, Alexander Burke caused a billing invoice submitted by defendant DAVID NEALE CARACAPPA to Company A to be approved for payment, and this approval was executed from Malvern, PA, within the Eastern District of Pennsylvania, in the amount of $8,000 for work on a patent, for which CARACAPPA had done no work, and this bill was invoice number 2204.

All in violation of Title 18, United States Code, Section 1349.

## COUNT TWO

THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:

1. Beginning on or about September 1, 2008, and continuing until on or about June 28, 2013, in the Eastern District of Pennsylvania, and elsewhere, defendant

**DAVID NEALE CARACAPPA**

conspired and agreed with Alexander Burke to conduct financial transactions, that is, transfers from The Bank of the James by check to Alexander Burke for deposit to NJM Bank, knowing that the property involved in the financial transactions represented the proceeds of a form of unlawful activity, that is, proceeds of wire fraud in violation of Title 18, United States Code, Section 1343, and conspiracy to commit wire fraud, in violation of Title 18, United States Code, Section 1349, knowing that the transactions were designed in part to conceal or disguise the nature, location source, ownership, and control of the proceeds of the unlawful activity, in violation of Title 18, United States Code, Section 1956(a).

2. Paragraphs 1 through 8 of Count One are incorporated as if fully set forth here.

## OVERT ACTS

In furtherance of the conspiracy, the defendant and others known and unknown to the grand jury committed the following overt acts in the Eastern District of Pennsylvania and elsewhere:

1. On or about September 1, 2008, defendant DAVID NEALE CARACAPPA submitted a bill to Company A in the amount of $8,000 for the preparation of a patent, after having been engaged to prepare the patent application by Alexander Burke, and for which CARACAPPA had done no work, and Company A assigned this bill invoice number 1751.

    2. On or about September 1, 2008, Alexander Burke approved for payment a billing invoice submitted by defendant DAVID NEALE CARACAPPA to Company A in the amount of $8,000 for the preparation of a patent, for which CARACAPPA had done no work, and Company A assigned this bill invoice number 1751.

    3. On or about October 6, 2008, defendant DAVID NEALE CARACAPPA caused $7,000 to be transferred from his account at Bank of the James to an account controlled by Alexander Burke at NJM Bank.

    4. On or about July 27, 2012, Alexander Burke caused a billing invoice submitted by defendant DAVID NEALE CARACAPPA to Company A to be approved for payment, and this approval was executed from Malvern, PA, within the Eastern District of Pennsylvania, in the amount of $8,000 for work on a patent, for which CARACAPPA had done no work, and this bill was invoice number 2204.

In violation of Title 18, United States Code, 1956(h).

## NOTICE OF FORFEITURE

**THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:**

1. As a result of the violation of Title 18, United States Code, Sections 1343 and 1349, set forth in this indictment, defendant

**DAVID NEALE CARACAPPA**

shall forfeit to the United States of America any property that constitutes, or is derived from, proceeds traceable to the commission of such offense, including, but not limited to, the sum of $2,417,665.

2. If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

    (a)    cannot be located upon the exercise of due diligence;

    (b)    has been transferred or sold to, or deposited with, a third party;

    (c)    has been placed beyond the jurisdiction of the Court;

    (d)    has been substantially diminished in value; or

    (e)    has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property subject to forfeiture.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

7

## NOTICE OF FORFEITURE

THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:

1. As a result of the violations of Title 18, United States Code, Section 1956(h), conspiracy to commit money laundering, set forth in this indictment, defendant

**DAVID NEALE CARACAPPA**

shall forfeit to the United States of America any property that constitutes, or is derived from, proceeds traceable to the commission of such offense, including, but not limited to, the sum of $2,098,977.

2. If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

    (a) cannot be located upon the exercise of due diligence;

    (b) has been transferred or sold to, or deposited with, a third party;

    (c) has been placed beyond the jurisdiction of the Court;

    (d) has been substantially diminished in value; or

    (e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982(b)(1), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property subject to forfeiture.

All pursuant to Title 18, United States Code, Section 982(a)(1) and (b)(1).

_____
**ZANE DAVID MEMEGER**
**United States Attorney**